UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | | |
|---|---|---|
| AMERICAN CASUALTY COMPANY OF READING, PA, a Pennsylvania Corporation, | ) ) ) | |
| *Plaintiff,* | ) ) | |
| v. | ) ) | No. 1:04-cv-309 *Edgar* |
| GINA SELF, | ) ) | |
| *Defendant.* | ) ) | |

## **MEMORANDUM**

American Casualty Company of Reading, PA ("American Casualty"), filed this action against Gina Self ("Self") seeking a declaratory judgment of its rights and obligations under two professional liability insurance policies it issued to Self. [Doc. No. 1-1]. Briefly, Self, a registered nurse and certified nurse practitioner, was named as a defendant in six personal injury actions in Tennessee state court alleging that Self was negligent in performing her professional duties. Pursuant to the professional liability insurance policies it issued to Self, American Casualty has defended Self in these six actions, under a reservation of rights. In this action, American Casualty seeks a declaratory judgment that it does not have a duty to defend or indemnify Self in the underlying actions because Self's actions, as alleged in the underlying complaints, fall outside the coverage provided by the professional liability insurance policies. American Casualty moves for summary judgment. [Doc. No. 13-1]. Self responded to this motion [Doc. No. 21-1], and American Casualty filed a reply [Doc. No. 22]. American Casualty's motion for summary judgment is now ripe for review.

-1-

## I. Discretionary Jurisdiction of Declaratory Judgment Act

Initially, although neither party addresses the issue, the Court must decide whether to exercise its discretionary jurisdiction over American Casualty's declaratory judgment claim. For, whether a district court should entertain a declaratory judgment action is a matter within the sound discretion of the district court. *Wilton v. Seven Falls Co.*, 515 U.S. 277, 282-90 (1995); *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 494 (1942); *AmSouth Bank v. Dale*, 386 F.3d 763, 784 (6th Cir. 2004). And whether a district court should exercise its jurisdiction over a declaratory judgment action is a threshold issue the Court must decide before addressing the merits of the pending motions. *Nationwide Mut. Fire Ins. Co. v. Willenbrink*, 924 F.2d 104, 105 (6th Cir. 1991). To guide district courts in making this determination, the Sixth Circuit has enunciated five factors:

> (1) whether the judgment would settle the controversy;
> (2) whether the declaratory judgment action would serve a useful purpose in clarifying the legal relations at issue;
> (3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race for res judicata";
> (4) whether the use of a declaratory action would increase the friction between our federal and state courts and improperly encroach on state jurisdiction; and
> (5) whether there is an alternative remedy that is better or more effective.

*AmSouth*, 386 F.3d at 785 (citing *Scottsdale Ins. Co. v. Roumph*, 211 F.3d 964, 968 (6th Cir. 2000)).

Applying these factors to the instant case, the Court decides to entertain American Casualty's declaratory judgment claim. Doing so will settle the controversy—whether, pursuant to the insurance policies, American Casualty has a duty to defend Self in the underlying actions—and will serve a useful purpose in clarifying the legal relations at issue. Indeed, a declaratory judgment action is an appropriate avenue to determine whether an insurer has a duty to defend an insured.

*Standard Fire Ins. Co. v. Chester-O'Donley & Assocs., Inc.*, 972 S.W.2d 1, 5 (Tenn. Ct. App. 1998) (citing *Allstate Ins. Co. v. Merritt*, 772 S.W.2d 911, 912 (Tenn. Ct. App. 1989)). Further, a declaratory remedy is not being used here for procedural fencing or to help American Casualty win a race for *res judicata*. Though the underlying actions were filed in Tennessee state courts, this Court's exercise of jurisdiction over this declaratory judgment action will not increase the friction between federal and state courts, as the issue in this action has not been presented to the state court. Finally, there is no superior or more effective alternative remedy. Accordingly, the Court will exercise its discretionary jurisdiction to entertain American Casualty's declaratory judgment claim.

Having decided to entertain this action, the Court turns its focus to the pending motion for summary judgment.

## II. Standard of Review

Summary judgment is appropriate where no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Shah v. Racetrac Petroleum Co.*, 338 F.3d 557, 566 (6th Cir. 2003). In ruling on a motion for summary judgment, the Court must view the facts contained in the record and all inferences that can be drawn from those facts in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Shah*, 338 F.3d at 566; *Nat'l Satellite Sports, Inc. v. Eliadis Inc.*, 253 F.3d 900, 907 (6th Cir. 2001). The Court cannot weigh the evidence, determine the credibility of witnesses, or determine the truth of any matter in dispute. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

The moving party bears the initial burden of demonstrating that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To refute such a showing, the non-

moving party must present some significant, probative evidence indicating the necessity of a trial for resolving a material, factual dispute. *Celotex*, 477 U.S. at 322. A mere scintilla of evidence is not enough. *Anderson*, 477 U.S. at 252; *Shah*, 338 F.3d at 566; *McLean v. Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). "Evidence suggesting a mere possibility" of a factual dispute is not enough to preclude summary judgment. *Shah*, 338 F.3d at 566; *Gregg v. Allen-Bradley Co.*, 801 F.2d 859, 863 (6th Cir. 1986).

The Court's role is limited to determining whether the case contains sufficient evidence from which a jury could reasonably find for the non-moving party. *Anderson*, 477 U.S. at 248, 249; *Nat'l Satellite Sports*, 253 F.3d at 907. While the Court draws all reasonable factual inferences in the light most favorable to the non-moving party, it may grant summary judgment if the record taken as a whole could not lead a rational, objective jury to find for the non-moving party. *Matsushita*, 475 U.S. at 587; *McKinnie v. Roadway Express, Inc.*, 341 F.3d 554, 557 (6th Cir. 2003).

## III. Facts

Since 1992 Self has been a licensed registered nurse. [Doc. No. 21-2, p.30, Self Aff. at ¶ 2]. In 2000 Self was certified as a nurse practitioner, pursuant to Tenn. Code Ann. § 63-7-123, authorizing Self to prescribe medication, a service registered nurses cannot otherwise perform. [*Id.* at ¶ 3]. At all times relevant to this action, Self has been employed by Plaza Orthopaedics, P.C. and W.H. King, Jr., M.D. and serves as a registered nurse with a certification as a nurse practitioner.

In 2003 and 2004, six former patients of Plaza Orthopaedics filed a lawsuit against Plaza Orthopaedics, Dr. King and Self, seeking to recover for allegedly negligent medical treatment. [*See* Doc. No. 14-5, Goins Complaint; Doc. No. 14-6, Turner Complaint; Doc. No. 14-7, Potts Complaint; Doc. No. 14-8, Russell Complaint; Doc. No. 14-9, Fields Complaint; Doc. No. 14-10,

Dixon Complaint]. In essence, the six complaints allege that Self and Dr. King were negligent in examining the patients, diagnosing and performing back surgery, and prescribing any post-operation medication. These allegedly negligent actions occurred between February 12, 2002, and May 13, 2003.

Relevant to this case, the underlying complaints make the following allegations regarding Self. First, these complaints each refer to Self as a nurse, a nurse practitioner, and also a physician's assistant. [*See* Doc. No. 14-5, Goins Complaint at ¶¶ 4, 7, 8, 9(a); Doc. No. 14-6, Turner Complaint at ¶¶ 4, 7, 8, 9(a); Doc. No. 14-7, Potts Complaint at ¶¶ 4, 7, 8, 9(a); Doc. No. 14-8, Russell Complaint at ¶¶ 4, 7, 8, 9(a); Doc. No. 14-9, Fields Complaint at ¶¶ 4, 7, 8, 9(a); Doc. No. 14-10, Dixon Complaint at ¶¶ 4, 7, 10, 25]. Further, the Goins, Turner, Potts, Russell and Fields complaints each allege that Self saw, examined and assessed each plaintiff, ultimately recommending back surgery, [Doc. No. 14-5, Goins Complaint at ¶ 6; Doc. No. 14-6, Turner Complaint at ¶ 6; Doc. No. 14-7, Potts Complaint at ¶ 6; Doc. No. 14-8, Russell Complaint at ¶ 6; Doc. No. 14-9, Fields Complaint at ¶ 6], and that Self was "negligent in the care and treatment rendered to the plaintiff," [Doc. No. 14-5, Goins Complaint at ¶ 8; Doc. No. 14-6, Turner Complaint at ¶ 8; Doc. No. 14-7, Potts Complaint at ¶ 8; Doc. No. 14-8, Russell Complaint at ¶ 8; Doc. No. 14-9, Fields Complaint at ¶ 8]. And the Dixon complaint alleges that Self saw and examined Dixon and recommended surgery, [Doc. No. 14-10, Dixon Complaint at ¶ 7], saw and examined Dixon post-surgery and "noted signs and symptoms of infection at the surgical site and prescribed an oral antibiotic," [*Id.* at ¶ 10], and that Self was negligent "by failing to immediately notify Dr. King of the signs and symptoms of infection present during her examination of Mr. Dixon on June 6, 2002 and [by] fail[ing] to take appropriate steps to determine the specific type of infection and [by] fail[ing] to

implement appropriate treatment," [*Id.* at ¶ 25].

Pursuant to two professional liability insurance policies it issued to Self, American Casualty provided Self a defense in each of these six actions. The first policy covered Self from May 21, 2001, to May 21, 2002, (the "2001-02 policy") [Doc. No. 13-3]; the second policy covered Self during the subsequent year, from May 21, 2002, to May 21, 2003, (the "2002-03 policy") [Doc. No. 13-4]. In general, these policies provided coverage for injuries arising from Self's actions as a registered nurse. [*See* Doc. Nos. 13-3, 13-4]. Pursuant to these policies, American Casualty provided a defense for Self under a reservation of rights.

Currently, only one of the six actions is pending against Self. The Goins, Turner, Potts, Russell and Fields plaintiffs each voluntarily non-suited their claims against Self. [*See* Doc. No. 21-2, pp. 4-18]. American Casualty provided Self a defense until she was dismissed from these actions. The only remaining action against Self is the Dixon complaint. American Casualty is still providing Self a defense in the Dixon action.

American Casualty filed this action, seeking a declaratory judgment that it has neither a duty to defend nor a duty to indemnify Self in the underlying actions. [Doc. No. 1-1]. Recognizing that it is no longer providing Self a defense in the five actions in which she was dismissed, American Casualty seeks to recover from Self the amount it incurred in defending Self in those five actions should this Court find that there was no duty to defend. [Doc. No. 22 at p. 4 n.1]. Accordingly, whether American Casualty had a duty to defend Self in these five actions is a proper issue for the Court to decide.

The Court now turns its attention to American Casualty's obligations to Self in the underlying actions pursuant to the 2001-02 and 2002-03 policies.

**IV.    Analysis**

As this Court's jurisdiction is based on diversity, the Court must first determine which state's substantive law applies. In so determining, this Court "must apply the choice-of-law rules of the forum state." *Cole v. Mileti*, 133 F.3d 433, 437 (6th Cir. 1998) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)); *accord NILAC Intern. Mktg. Group v. Ameritech Svs., Inc.*, 362 F.3d 354, 358 (6th Cir. 2004). In insurance coverage disputes, Tennessee courts apply the substantive law of the state in which the insurance policy was issued and delivered if there is no choice of law clause in the policy. *Kustoff v. Stuyvesant Ins. Co.*, 22 S.W.2d 356, 358 (Tenn. 1929); *Chester-O'Donley*, 972 S.W.2d at 5 (citing *Ohio Cas. Ins. Co. v. Travelers Indem. Co.*, 493 S.W.2d 465, 467 (Tenn.1973), *Kustoff*, 22 S.W.2d at 358, *Hutchison v. Tennessee Farmers Mut. Ins. Co.*, 652 S.W.2d 904, 905 (Tenn. Ct. App. 1983)); *accord Trinity Univ. Ins. Co. v. Turner Funeral Home, Inc.*, No. 1:02-cv-231, 2003 WL 23218046, at *3 (E.D. Tenn. Dec. 12, 2003).

Here, neither American Casualty nor Self point to any choice of law provision in the insurance policies, and the Court finds none. Turning to Tennessee's choice of law rules, the Court finds that the policies were issued and delivered to Self in Tennessee. [Doc. No. 13-3 at p. 1; Doc. No. 13-4 at p.1]. Accordingly, the substantive law of Tennessee governs this dispute.

Tennessee law provides some general principles underpinning the analysis of insurance contract disputes. Interpreting an insurance contract is a legal issue, properly performed by a court. *St. Paul Fire and Marine Ins. Co. v. Torpoco*, 879 S.W.2d 831, 833 (Tenn. 1994); *Chester-O'Donley*, 972 S.W.2d at 5-6. When the relevant facts are not in dispute, these legal issues can be resolved on a summary judgment motion. *Id.*; *Chester-O'Donley*, 972 S.W.2d at 6. Insurance

-7-

contracts, like contracts in general, are to be interpreted as written, in the absence of fraud or mistake. *Id.*; *Chester-O'Donley*, 972 S.W.2d at 7. Any ambiguities must "be construed against the insurance company and in favor of the insured" because the insurer writes the contract. *Id.*; *Chester-O'Donley*, 972 S.W.2d at 7.

Important to the specific inquiry, Tennessee law differentiates between the duty to defend and the duty to indemnify. "[T]he obligation of a liability insurance company to defend an action brought against the insured by a third party is to be determined solely by the allegations contained in the complaint in that action." *St. Paul*, 879 S.W.2d at 835 (quotation omitted). "An insurer's duty to defend is triggered when its policy arguably, as opposed to distinctly, covers the claims being made." *Chester-O'Donley*, 972 S.W.2d at 11; *accord St. Paul*, 879 S.W.2d at 835. "An insurer may not properly refuse to defend an action against its insured unless it is plain from the face of the complaint that the allegations fail to state facts that bring the case within or potentially within the policy's coverage." *Drexel Chem. Co. v. Bituminous Ins. Co.*, 933 S.W.2d 471, 480 (Tenn. Ct. App. 1996) (internal quotation omitted); *accord St. Paul*, 879 S.W.2d at 835; *York v. Vulcan Materials Co.*, 63 S.W.3d 384, 388 (Tenn. Ct. App. 2001); *Chester-O'Donley*, 972 S.W.2d at 11. "If even one of the allegations is covered by the policy, the insurer has a duty to defend, irrespective of the number of allegations that may be excluded by the policy." *Drexel*, 933 S.W.2d at 480 (citing *U.S. Fidelity & Guar. Co. v. Murray Ohio Mfr. Co.*, 693 F.Supp. 617 (M.D. Tenn. 1988)); *accord York*, 63 S.W.3d at 387-88. The duty to defend "continues until the facts and the law establish that the claimed loss is not covered." *Chester-O'Donley*, 972 S.W.2d at 11. In contrast "the duty to indemnify, i.e., ultimate liability, depends . . . upon the true facts" and only arises if the loss suffered is actually covered by the terms of the policy. *St. Paul*, 879 S.W.2d at 835.

From these principles, it is quite apparent that "the duty to defend is broader than the duty to pay or indemnify." *St. Paul*, 879 S.W.2d at 835 (quotation omitted); *accord York*, 63 S.W.3d at 388; *Drexel*, 933 S.W.2d at 480. Indeed, "it is not uncommon that an insurer will have a duty to defend based on the allegations in the complaint, yet have no subsequent duty to indemnify the insured." *St. Paul*, 879 S.W.2d at 835 (quotation omitted). Consequently, when the duty to indemnify depends upon factual issues yet to be decided, a decision regarding that duty can await the resolution of the factual issues.

Turning to the instant case, American Casualty seeks a declaratory judgment that it does not have a duty to defend Self in the underlying actions nor to indemnify Self for any resulting damages based on two professional liability insurance policies. The 2001-02 policy contains the following relevant provisions:

> I. COVERAGE AGREEMENT
>
> > We will pay all amounts up to the limit of liability which **you** become legally obligated to pay as a result of **injury** or **damage**. In addition to the limit of liability, we will also pay **claim expenses**. The **injury** or **damage** must be caused by a **medical incident** arising out of the supplying of, or failure to supply, **professional services** by **you**, or by anyone for whose professional acts or omissions **you** are legally responsible. The **medical incident** must happen on or after the effective date and before the end of the policy period stated on the **certificate of insurance**.
> > ***
>
> IV. ADDITIONAL DEFINITIONS
> ***
> > **"Medical Incident"** means any act, error or omission in **your** providing or failure to provide **professional services**. . . .

[Doc. No. 13-3 at Occurrence Coverage Part]. The 2001-02 policy defines professional services as follows: "'**Professional Services**' means those services for which **you** are licensed, trained and

-9-

qualified to perform in **your** capacity as a **healthcare provider** in the profession(s) shown on the **Certificate of Insurance**." [*Id.* at Common Policy Conditions § XVIII]. The certificate of insurance for the 2001-02 policy reflects Self's medical specialty as "Registered Nurse." [*Id.* at Certificate of Insurance].

The 2002-03 policy contains the following relevant provisions:

> I. COVERAGE AGREEMENTS
>
> Coverage under any of the following coverage agreements apply only to acts, errors or omissions, including **medical incidents, Good Samaritan incidents, placement services incidents,** or **personal injury**, which occurred on or after the effective date of coverage, and before the expiration date of the **policy period** stated on the **certificate of insurance**.
>
> In addition to the limit of liability, we will also pay **claim expenses**.
>
> A. PROFESSIONAL LIABILITY
>
> We will pay all amounts, up to the Professional Liability limit of liability stated on the **certificate of insurance**, that **you** become legally obligated to pay as a result of a **professional liability claim** arising out of a **medical incident** by **you** or by someone for whose **professional services you** are legally responsible.
> ***
> IV. ADDITIONAL DEFINITIONS
> ***
> **"Medical Incident"** means any act, error or omission in **your** providing **professional services** which results in **injury** or **damage**. . . .

[Doc. No. 13-4 at Occurrence § 1.A]. The 2002-03 policy defines professional services as follows:

"**'Professional Services'** means those services for which **you** are licensed, certified, accredited, trained or qualified to perform within the scope of practice recognized by the regulatory agency

-10-

responsible for maintaining the standards of the profession(s) shown on the **certificate of insurance** and which **you** perform as, or on behalf of, the **named insured**. . . ." [*Id.* at Common Policy Conditions § XVII]. The certificate of insurance for the 2002-03 policy reflects Self's medical specialty as "Registered Nurse." [*Id.* at Certificate of Insurance].

Both policies also exclude coverage for the following:

> V. EXCLUSIONS
> \*\*\*
> C. any of **your** actions or omissions:
>
>> 1. as a licensed or certified:
>>    a. nurse anesthetist or nurse midwife;
>>    b. physician, dentist, chiropractor, or podiatrist;
>>    c. self-employed perfusionist;
>>    d. personal trainer, physician assistant, psychologist or social worker except as an employee of a firm we insure under this program, or
>>
>> 2. as a health care student, health care aide, or home health care aid, who is not under **supervision**.
> \*\*\*
> E. "any liability **you** have for a business or profession, including **consulting services**, other than that named on the **certificate of insurance**.

[Doc. No. 13-3 at Occurrence Coverage Part § V; *accord* Doc. No. 13-4 at Occurrence § V].

American Casualty has a duty to defend Self under the terms of these insurance policies, if the underlying actions may potentially come within the insurance coverage. *See St. Paul*, 879 S.W.2d at 835; *York*, 63 S.W.3d at 388; *Chester-O'Donley*, 972 S.W.2d at 11; *Drexel*, 933 S.W.2d at 480. There is no doubt that, at bottom, both the 2001-02 and 2002-03 policies cover for Self for any liability for injuries or damage arising from her services as a registered nurse. Accordingly, if the underlying actions potentially allege an injury arising from Self's actions as a registered nurse,

then American Casualty has a duty to defend Self.

Registered nurses in Tennessee practice under the definition of "professional nursing" provided in Tenn. Code Ann. § 63-7-103. The statute defines "professional nursing" as "the performance for compensation of any act requiring substantial specialized judgment and skill based on knowledge of the natural, behavioral and nursing sciences, and the humanities, as the basis for application of the nursing process in wellness and illness care." Tenn. Code Ann. § 63-7-103(a)(1). The statute further delineates some of the duties of registered nurses:

> (A) Responsible supervision of a patient requiring skill and observation of symptoms and reactions and accurate recording of the facts;
> (B) Promotion, restoration and maintenance of health or prevention of illness of others;
> (C) Counseling, managing, supervising and teaching of others;
> (D) Administration of medications and treatments as prescribed by a licensed physician, dentist, podiatrist or nurse authorized to prescribe pursuant to § 63-7-123 [the statute governing certified nurse practitioners];
> (E) Application of such nursing procedures as involve understanding of cause and effect; and
> (F) Nursing management of illness, injury or infirmity including identification of patient problems.

*Id.* at § 63-7-103(a)(2). Similarly, the statute places some limitations on the services a registered nurse can perform: "the practice professional nursing does not include acts of medical diagnosis or the development of a medical plan of care and therapeutics for a patient." *Id.* at § 63-7-103(b). A registered nurse can become a certified nurse practitioner, entitling the nurse to prescribe and issue drugs. Tenn. Code Ann. § 63-7-123.

Turning to the instant case, the Goins, Turner, Potts, Russell and Fields complaints each allege that Self saw, examined and assessed each plaintiff and ultimately recommended that the plaintiff have back surgery. [Doc. No. 14-5, Goins Complaint at ¶ 6; Doc. No. 14-6, Turner

-12-

Complaint at ¶ 6; Doc. No. 14-7, Potts Complaint at ¶ 6; Doc. No. 14-8, Russell Complaint at ¶ 6; Doc. No. 14-9, Fields Complaint at ¶ 6]. These plaintiffs also allege that Self was "negligent in the care and treatment rendered to the plaintiff," including Self's assessments of the plaintiffs. [Doc. No. 14-5, Goins Complaint at ¶ 8; Doc. No. 14-6, Turner Complaint at ¶ 8; Doc. No. 14-7, Potts Complaint at ¶ 8; Doc. No. 14-8, Russell Complaint at ¶ 8; Doc. No. 14-9, Fields Complaint at ¶ 8]. The Dixon complaint alleges that Self saw and examined Dixon, recommended surgery, saw and examined Dixon post-surgery, "noted signs and symptoms of infection at the surgical site and prescribed an oral antibiotic." [Doc. No. 14-10, Dixon Complaint at ¶¶ 7, 10]. The Dixon complaint also alleges that Self was negligent "by failing to immediately notify Dr. King of the signs and symptoms of infection present during her examination of Mr. Dixon on June 6, 2002 and [by] fail[ing] to take appropriate steps to determine the specific type of infection and [by] fail[ing] to implement appropriate treatment." [*Id.* at ¶ 25].

American Casualty has a duty to defend Self if these underlying actions allege facts that potentially constitute an injury arising from Self's services as a registered nurse. Each of the complaints specifically alleges that Self was negligent in her care and treatment of the respective plaintiff, certainly duties that fall within the ambit of a registered nurse. Perhaps most illustrative is the allegation in the Dixon complaint—the only pending complaint against Self—that Self was negligent "by failing to immediately notify Dr. King of the signs and symptoms of infection present during her examination of Mr. Dixon on June 6, 2002 and [by] fail[ing] to take appropriate steps to determine the specific type of infection." [*Id.*]. The Court finds that each underlying complaint alleges facts that potentially constitutes an injury arising from Self's services as a registered nurse. Accordingly, American Casualty has a duty to defend Self.

In arguing that it has no duty to defend Self in the underlying actions, American Casualty contends that the underlying complaints seek to hold Self liable for negligently performing duties which a registered nurse is prohibited from performing, under Tenn. Code Ann. § 63-7-103. In other words, American Casualty argues that Self was acting as a nurse practitioner and physician's assistant while the insurance policies only provide coverage for Self's services as a registered nurse. In support of its position, American Casualty notes that the complaints refer to Self as a nurse practitioner and physician's assistant and allege that Self developed medical plans and prescribed medication. And, as American Casualty's argument goes, the insurance policies only provide coverage for Self as a registered nurse, not as a nurse practitioner or physician's assistant.

Whether the insurance policies are limited to Self's services as a registered nurse or not—a highly contested issue and one the Court need not now decide—the Court finds American Casualty's argument hyper-technical and unpersuasive. As American Casualty argues, the underlying complaints refer to Self as a "nurse practitioner" and a "physician's assistant." [*See* Doc. No. 14-5, Goins Complaint at ¶¶ 4, 7, 8, 9(a); Doc. No. 14-6, Turner Complaint at ¶¶ 4, 7, 8, 9(a); Doc. No. 14-7, Potts Complaint at ¶¶ 4, 7, 8, 9(a); Doc. No. 14-8, Russell Complaint at ¶¶ 4, 7, 8, 9(a); Doc. No. 14-9, Fields Complaint at ¶¶ 4, 7, 8, 9(a); Doc. No. 14-10, Dixon Complaint at ¶¶ 4, 25]. But to hold that American Casualty does not have a duty to defend Self in the underlying actions solely due to the professional title given Self by the underlying plaintiffs' lawyers is hyper-technical and extreme. Indeed, reflective of the importance that each underlying plaintiff's lawyer placed on the importance of the terminology used to describe Self, several complaints refer to Self as both a nurse practitioner and physician's assistant. [*Compare* Doc. No. 14-5, Goins Complaint at ¶¶ 4, 7, 8, *with id.* at ¶ 9(a); *compare* Doc. No. 14-6, Turner Complaint at ¶¶ 4, 7, 8, *with id.* at ¶ 9(a); *compare* Doc.

No. 14-7, Potts Complaint at ¶¶ 4, 7, 8, *with id.* at ¶ 9(a); *compare* Doc. No. 14-8, Russell Complaint at ¶¶ 4, 9(a), *with id.* at ¶¶ 7, 8; *compare* Doc. No. 14-9, Fields Complaint at ¶¶ 4, 9(a), *with id.* at ¶¶ 7, 8].

Moreover, if this Court were to adopt American Casualty's hyper-technical approach of relying on the professional title given Self in the underlying complaints, American Casualty's argument would still be unpersuasive. For, those same complaints also refer to Self as a "nurse." [See Doc. No. 14-5, Goins Complaint at ¶ 8(c); Doc. No. 14-6, Turner Complaint at ¶ 8(c); Doc. No. 14-7, Potts Complaint at ¶ 8(c); Doc. No. 14-8, Russell Complaint at ¶ 8(c); Doc. No. 14-9, Fields Complaint at ¶ 8(c); Doc. No. 14-10, Dixon Complaint at ¶¶ 7, 10, 25]. In short, this Court will not find that American Casualty has no duty to defend Self based on the terminology used to describe Self in the underlying complaints.

Further, that the underlying complaints allege that Self performed duties, such as developing medical plans and prescribing medication, which a registered nurse cannot perform pursuant to Tenn. Code Ann. § 63-7-103 does not warrant a finding that American Casualty has no duty to defend Self. The issue here is whether the allegations in the complaint *potentially* come within policy coverage. And certainly, as detailed above, the underlying complaints allege facts that could potentially impose liability on Self for negligently performing the duties of a registered nurse. In other words, the underlying plaintiffs are not limited to proving that Self was only negligent in developing medical plans and prescribing medication; rather, as noted above, they could also prove that Self was negligent in her duties as a registered nurse. Accordingly, the underlying complaints potentially fall within policy coverage, and American Casualty has a duty to defend Self. American Casualty's motion for a summary judgment in this regard will be **DENIED**.

That American Casualty has a duty to defend Self does not mean, concomitantly, that American Casualty has a duty to indemnify Self for any resulting damages. For, as noted above, the issue in determining whether American Casualty has a duty to defend is distinct from whether American Casualty has a duty to indemnify: in the former the inquiry is whether the injury—i.e. the underlying action—may potentially come within policy coverage; in the latter the inquiry is whether the injury actually comes within coverage. *See St. Paul*, 879 S.W.2d at 835; *York*, 63 S.W.3d at 388; *Drexel*, 933 S.W.2d at 480. Consequently, when there are issues to be decided in the future which may or may not implicate indemnity, the decision regarding an insurer's duty to indemnify should await the resolution of those issues. In this case, such issues exist. The Court will await resolution of the only remaining underlying action—the Dixon case—to determine American Casualty's duty to indemnify Self. Accordingly, American Casualty's motion for summary judgment in this regard will be **DENIED**.

A separate order shall enter.

                                                              */s/ R. Allan Edgar*
                                                              R. ALLAN EDGAR
                                          CHIEF UNITED STATES DISTRICT JUDGE